THE CHAPEL, APPELLANT, *v.* TESTA, TAX COMMR., APPELLEE.

[Cite as *The Chapel v. Testa,* 129 Ohio St.3d 21, 2011-Ohio-545.]

*Real property tax — Charitable-use exemption — R.C. 5709.12 — Holding land open to public for recreational use — Religious motivation not incompatible with charitable-use exemption.*

(No. 2010-0562 — Submitted February 2, 2011 — Decided February 10, 2011.)

APPEAL from the Board of Tax Appeals, No. 2007-V-2.

_____

**Per Curiam.**

{¶ 1} This is an appeal from a decision of the Board of Tax Appeals ("BTA") in a real-property-tax-exemption case. Appellant, The Chapel, is a nonprofit corporation organized in 1953 that operates two churches: the older church at 35 Fir Hill Avenue in Akron and a newer one in the city of Green, south of Akron, built on property that was acquired in 2000 and 2001. The latter church and its surrounding acreage are the subject of The Chapel's exemption application, which relied partly on the house-of-public-worship exemption at R.C. 5709.07(A) and partly on the charitable-use exemption at R.C. 5709.12(B). The tax commissioner granted the portion of the application relating to the "house of public worship" pursuant to R.C. 5709.07(A)(2) and denied exemption to the remainder of the property. On appeal, the BTA affirmed the commissioner's determination and modified the dividing line between taxable and exempt portions of the church-owned tract.

{¶ 2} Specifically at issue in The Chapel's appeal to this court is land improved for and devoted to recreational activities in which the general public participates. The BTA affirmed the commissioner's denial of exemption for this land based on its finding that the use of the land was ancillary to the public

worship performed on the parcel that the commissioner held exempt pursuant to R.C. 5709.07(A). On appeal, The Chapel renews its contention that the recreational land should be split-listed and exempted under R.C. 5709.12(B) because holding the land open to the public for recreation constitutes a charitable use of real property. We agree, and we therefore reverse.

**Facts**

{¶ 3} Founded in 1934, The Chapel established itself as a nonprofit corporation in 1953 and holds certification as a tax-exempt entity pursuant to Section 501(c)(3) of the Internal Revenue Code. It moved its worship services to 35 Fir Hill Avenue in Akron in 1953, and after many years of expanding its congregation and activities, The Chapel decided to open a second church. In 2000 and 2001, it acquired property in the city of Green south of Akron for that purpose. That acquisition encompassed 79.8389 acres.

{¶ 4} The Chapel then built a large church building with classrooms on part of the property in 2001. The original site plan prepared in 2000 indicates areas to be devoted to recreation, which currently include two softball diamonds, a soccer field, and a jogging path that follows the circumference of the property. The playing fields were developed some time after construction of the church building. The jogging path was available for use in the fall or late summer of 2005. The recreational facilities were generally usable as of 2006. Although one area is intended to be developed into a ball field, it had not been developed as of the July 9, 2008 hearing before the BTA, because The Chapel was waiting for the settling of newly graded ground.

{¶ 5} The Chapel views itself as conducting a sports ministry in connection with the recreational portions of the property and holds 14 events, including church-sponsored soccer teams and flag football games. Most of the participants in those events are community members who are not congregants of The Chapel.

{¶ 6} The city of Green also has sports leagues that use the property. FedEx and Chick-Fil-A conduct company events on the fields. During the summer months, the church stages a day camp called Straight Street for children age six through eighth grade with several hundred participants. The jogging path is used by the general public without restriction. An estimated 3,000 people participated in activities on the recreational property (including use of the jogging path) in 2008, most of whom were not congregants of The Chapel.

{¶ 7} The Chapel had paid all costs to develop and maintain the property but did not charge the public to use the recreational facilities. In the church's softball league a $25 registration fee is required for uniforms and umpire fees. The property does not generate income for the church. The mayor of the city of Green testified that the city itself benefited because the church developed and made the property available for public use, thereby providing public recreational facilities that the city would otherwise have to pay for itself.

{¶ 8} On December 30, 2002, The Chapel filed an application that sought to exempt three parcels that total 78.8963 acres. The application asked for an exemption of 57.9768 acres under R.C. 5709.07 as land associated with a house of public worship and sought exemption for another 20.9195 acres under R.C. 5709.12 as land used exclusively for a charitable use. In his final determination, the commissioner granted the exemption to part of the property pursuant to R.C. 5709.07(A)(2), but held that the recreational portion of the property did not qualify for a charitable-use exemption under R.C. 5709.12(B). The Chapel appealed, and the BTA affirmed the denial of the exemption to the recreational property.

## Analysis

{¶ 9} When a BTA decision is appealed, this court looks to see if that decision was "reasonable and lawful." R.C. 5717.04. Under this standard, we acknowledge that " '[t]he BTA is responsible for determining factual issues and,

3

if the record contains reliable and probative support for these BTA determinations,' " we will affirm them. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483. On the other hand, we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " Id., quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789.

{¶ 10} In the present case, the commissioner found that the primary use of the recreational property was by the public, not by The Chapel itself. The BTA did not disturb that factual finding, and it is supported by the record. We must therefore determine whether the property is exempt under R.C. 5709.12(B) in light of that finding. Our review of this question of law is not deferential but de novo. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 n.E.2d 1042, ¶ 10.

*Under R.C. 5709.12(B), property owned by an institution that is accessible without charge to the public for recreational use is exempt*

{¶ 11} Under R.C. 5709.12(B), "[r]eal and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation * * *." In *Highland Park Owners, Inc. v. Tracy* (1994), 71 Ohio St.3d 405, 644 N.E.2d 284, we held that to qualify for exemption under R.C. 5709.12(B), the property must belong to an institution and be used exclusively for charitable purposes. Id. at 406.

{¶ 12} It is undisputed that The Chapel qualifies as an "institution" for purposes of R.C. 5709.12(B). Nor is there dispute concerning the commissioner's decision to grant the house-of-public-worship exemption under R.C. 5709.07(A)(2) to approximately 57 acres of The Chapel's contiguous parcels.

{¶ 13} We have held that making property accessible to institution members and to the general public for recreational purposes without charge is a

4

charitable use of property. *Highland Park Owners* at 407. According to the commissioner's final determination in this case, the evidence shows that "the primary users of the recreation fields are outside parties, including independent sports leagues, baseball clinics, cycling clubs and youth sports programs conducted through the City of Green. Additionally, the applicant allows the public to use its walking and jogging trails."[1] This factual finding describes a charitable use of property under *Highland Park Owners*. Because The Chapel is incontestably an institution, the commissioner's own factual findings compel the conclusion that the property is exempt under *Highland Park Owners*.

{¶ 14} Against this straightforward reasoning, the commissioner denied the exemption on the grounds that "merely holding the property open to the public and allowing various third parties to use it" is not a charitable use and "does not qualify [the property] for exemption under R.C. 5709.12." The passage is a clear error of law under *Highland Park Owners*.

{¶ 15} However, once his determination had been appealed to the BTA, the commissioner took a different tack by arguing that The Chapel "should be precluded from seeking exemption under R.C. 5709.12(B) [the charitable-use exemption] for property that would not otherwise qualify under R.C. 5709.07(A)(2) [the public-worship exemption]." *The Chapel v. Levin* (Mar. 2, 2010), BTA No. 2007-V-2, at 11. The BTA concluded that the commissioner had properly denied the exemption because the "recreational fields and jogging path are ancillary to appellant's primary use for public worship" of the contiguous

---

1. At oral argument the commissioner's counsel suggested that the evidence at the BTA showed a division of use "about half" between recreational activities organized by The Chapel (which are aimed at involving the general public) and direct public use of the facilities. But the distinction plainly does not matter under the commissioner's analysis, because making the property available for public use cannot, in the commissioner's view, qualify the property for exemption so long as the "overarching" or primary purpose in doing so is to support The Chapel's mission of spreading the Christian faith.

parcels owned by The Chapel. *Id.* at 13. Both the commissioner's argument and the BTA's decision are predicated on a misreading of the case law.

*Neither church ownership nor religious motivations defeat a claim of*
*exemption for charitable use under R.C. 5709.12(B)*

**{¶ 16}** As already noted, the commissioner's finding leads to the conclusion that the property is exempt pursuant to *Highland Park Owners.* Nonetheless, the BTA denied exemption because the property use was "ancillary" to the church's public-worship use of adjacent acreage. The commissioner defends the BTA's decision by arguing that church ownership and the church's motivation to use its property in accordance with its faith-based sense of mission are consequential elements of the exemption claim.

**{¶ 17}** The case law establishes that they are not. To be sure, we have stated that "uses which are merely supportive of public worship may not be exempted." *Faith Fellowship Ministries, Inc. v. Limbach* (1987), 32 Ohio St.3d 432, 436, 513 N.E.2d 1340; accord *Moraine Hts. Baptist Church v. Kinney* (1984), 12 Ohio St.3d 134, 137, 12 OBR 174, 465 N.E.2d 1281. But that statement occurs only in the context of a claim of exemption under R.C. 5709.07(A)(2), which exempts "[h]ouses used exclusively for public worship * * * and the ground attached to them that is not leased or otherwise used with a view to profit and that is necessary for their property occupancy, use, and enjoyment."

**{¶ 18}** "[M]erely supportive of public worship" characterizes land use that is not sufficiently linked by necessity to public worship and therefore does not qualify the land for the house-of-public-worship exemption under R.C. 5709.07(A)(2). We have never employed that phrase to deny *a charitable-use exemption* where, as in this case, the use is of a kind that has already been held to constitute an exempt use under R.C. 5709.12(B). Quite simply, the fact that a church is the institution that owns property and that puts it to an established

charitable use is usually irrelevant to a claim for exemption under R.C. 5709.12(B).

{¶ 19} Indeed, our recent cases have insisted that religious ownership and motives are not inimical to a charitable-use claim. In *True Christianity Evangelism v. Tracy* (1999), 87 Ohio St.3d 48, 716 N.E.2d 1154, we addressed a claim of exemption under R.C. 5709.12(B) with respect to a house used as an office for preparing tracts involving religious and spiritual themes that were distributed free of charge at various events. The BTA had affirmed the commissioner's denial of the charitable-use exemption on the grounds that "appellant's purpose is religious rather than charitable." *True Christianity Evangelism v. Tracy* (Sept. 25, 1998), BTA No. 96-K-904, 1998 WL 683022, at *3. We reversed, holding that the BTA "went astray" when it predicated the denial of exemption on the appellant's "purpose * * * to disseminate a religious message." *True Christianity*, 87 Ohio St.3d at 51, 716 N.E.2d 1154. We rejected the BTA's decision in light of the well-settled principle that an "institution need not be charitable to be eligible for exemption under R.C. 5709.12(B)" and that " 'any institution, irrespective of its charitable or noncharitable character, may take advantage of a tax exemption if it is making exclusive charitable use of the property.' [Emphasis sic.]" Id. at 51 and 50, quoting *White Cross Hosp. Assn. v. Bd. of Tax Appeals* (1974), 38 Ohio St.2d 199, 203, 67 O.O.2d 224, 311 N.E.2d 862 (Stern, J., concurring).

{¶ 20} On remand, the BTA acknowledged that "aspects of [the organization's president's] activities, and those of the institutions with which he is associated, may arguably be considered charitable in nature," but nonetheless denied exemption because "the primary use to which the property is devoted is an evangelistic one." *True Christianity Evangelism v. Tracy* (Jan. 14, 2000), BTA No. 96-K-904, 2000 WL 31781, at *2. Again we reversed. *True Christianity Evangelism* (2001), 91 Ohio St.3d 117, 742 N.E.2d 638. Because the case law

established that the " 'dissemination of useful information to benefit mankind is, traditionally, charity,' " and because the "information disseminated by appellant attempts to encourage people to read the Bible and to live up to its moral standards," the use of the property qualified as charitable under R.C. 5709.12(B). Id. at 120, quoting *Herb Soc. of Am., Inc. v. Tracy* (1994), 71 Ohio St.3d 374, 376, 643 N.E.2d 1132.

{¶ 21} Taken together, our two decisions in *True Christianity* establish that religious institutions may not be discriminated against in the consideration of a claim for exemption under R.C. 5709.12(B). Namely, if the use to which property is put otherwise qualifies as charitable, neither the fact of ownership by a religious organization nor the existence of religious motives in connection with the charitable use will defeat the claim of exemption. See also *First Baptist Church of Milford, Inc. v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 17 ("Ownership by a religious institution does not disqualify property from being considered for exemption under R.C. 5709.12"); *NBC-USA Hous., Inc.—Five v. Levin*, 125 Ohio St.3d 394, 2010-Ohio-1553, 928 N.E.2d 715, ¶ 17 (under R.C. 5709.12(B), "we have emphasized that the entitlement of a particular parcel to exemption depends on the use of the property, not the nature of the institution"). Indeed, in our recent decision in *Church of God in N. Ohio v. Levin*, 124 Ohio St.3d 36, 2009-Ohio-5939, 918 N.E.2d 981, ¶ 32, the majority opinion emphasized that a church "would stand on equal footing with any other institution in applying to exempt" property devoted to an activity that "actually constitutes charitable use."

{¶ 22} Given the reassertion of the *True Christianity* doctrine in *Church of God*, the commissioner's attempted reliance on the latter case is anomalous. The commissioner charges that The Chapel has "strategically postured its claim" so as to avoid the limitations imposed with respect to R.C. 5709.07(A)(2). But unlike the applicant in *Church of God*, The Chapel actually puts the property at

issue to a use that has been established to be charitable in other contexts. By contrast, the applicant in *Church of God* attempted to establish its claim of exemption by arguing that the administrative use of the building (*not* a charitable use in itself) was ancillary to another activity that was charitable: the public-worship activity of the denomination's local congregations. In rejecting the exemption claim in *Church of God*, we held that public worship does not by itself constitute a charitable use. We predicated our holding on the longstanding distinction between the public-worship and charitable-use exemptions, as well as the doctrine that the limitations on the public-worship exemption ought not to be evaded by an expansive construction of the charitable-use exemption. *Church of God*, 124 Ohio St.3d 36, 2009-Ohio-5939, 918 N.E.2d 981, ¶ 26-30.

{¶ 23} The exemption claim in this case is the opposite of what we confronted in *Church of God*. Here the applicant argues not that the property's use is exempt by being ancillary to activities conducted elsewhere, but that the very activity on the property itself entitles it to exemption. And unlike the claimant in *Church of God*, The Chapel does not seek to expand the scope of the charitable-use exemption; it asks only to be granted the same exemption that any nonreligious entity would plainly qualify for pursuant to *Highland Park Owners*, 71 Ohio St.3d 405, 644 N.E.2d 284. Because the denial of the exemption claim by the commissioner and the BTA rests upon legal error, the BTA's decision must be reversed.

*The tax commissioner has waived his objections to The Chapel's*
*prospective-use argument, and the case will be remanded to the BTA*

{¶ 24} Reversing the decision below requires us to consider two additional matters.

{¶ 25} First, the BTA acknowledged that it did not "reach the question of whether or not the contested acreage was used for an exempt purpose on January 1 of the year for which exemption was requested, as the law requires." *The*

*Chapel v. Levin* (Mar. 2, 2010), BTA No. 2007-V-2, at 1, fn. 1. As a general matter, the claimant must bear the burden to show that it meets the statutory prerequisites for the tax exemption or reduction. *Key Servs. Corp. v. Zaino* (2002), 95 Ohio St.3d 11, 15-16, 764 N.E.2d 1015; accord *Anderson/Maltbie Partnership v. Levin*, 127 Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16, quoting *Ares, Inc. v. Limbach* (1990), 51 Ohio St.3d 102, 104, 554 N.E.2d 1310 (in an exemption case "the onus is on the taxpayer to show that the language of the statute 'clearly express[es] the exemption' in relation to the facts of the claim").

{¶ 26} On the other hand, the commissioner's final determination in this case did not make any findings concerning the relationship between the tax-lien date and when recreational use was intended or actually begun. The commissioner did not state that the time lapse constituted a ground for denying the exemption, nor did the commissioner mention the issue in his brief at the BTA. The latter omission is especially significant in light of the fact that The Chapel argued its entitlement under the prospective-use doctrine to the BTA.[2] Moreover, we have observed that when the commissioner fails to raise a particular issue in a BTA brief, the BTA can reasonably conclude that the issue has been waived. See *HealthSouth Corp. v. Levin*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 18, fn. 2.

{¶ 27} Under all these circumstances, we hold that the commissioner has waived any reliance on arguments that the recreational use started at a later date than that requested in the exemption application. Once the commissioner's final

---

2. The commissioner's counsel stated at oral argument that The Chapel mentioned prospective use for the first time in the reply brief at the court. That is mistaken. At page 18 in its brief before the BTA, The Chapel cited *Episcopal School of Cincinnati v. Levin*, 117 Ohio St.3d 412, 2008-Ohio-939, 884 N.E.2d 561, and argued that the evidence showed that the prospective-use test was satisfied.

determination omitted to address the issue as a ground for denying the exemption, that official incurred the burden to timely notify The Chapel that it must prove the existence of a previously unaddressed element of the exemption claim. Cf. *Key Servs. Corp.*, 95 Ohio St.3d at 16, 764 N.E.2d 1015 (BTA could not refuse to consider elements of a tax-reduction claim where *during the BTA appeal* "the commissioner wanted to show that Key did not provide the services eligible for a refund under R.C. 5739.071" and "attempted to inquire into the facts to support his decision to deny the refund"). [3] By omitting any mention of the issue in its BTA brief, the commissioner failed to give notice and thereby waived the argument.

{¶ 28} As a result of his omissions the commissioner, not The Chapel, is bound by waiver. On remand, the exemption will be granted with respect to the recreational acreage as of the tax-lien date to which the original exemption application relates.[4]

---

3. At oral argument, the commissioner took the position that the tax-lien-date issue was jurisdictional and could not be waived. Apparently the commissioner relies on *Sylvania Church of God v. Levin,* 118 Ohio St.3d 260, 2008-Ohio-2448, 888 N.E.2d 408, in which we affirmed a decision of the BTA that upheld the commissioner's denial of an exemption on the grounds that he lacked jurisdiction because the applicant neither owned nor used the property on the lien date. Id. at ¶ 9. That case is not apposite, because the focus in that case was ownership on the lien date, not use. See *Sylvania Church of God v. Wilkins* (May 4, 2007), BTA No. 2006-B-48, at 1, 4, 2007 WL 1366327, affirmed, 118 Ohio St.3d 260, 2008-Ohio-2448, 888 N.E.2d 408. We have held that the applicant's status as owner constitutes a jurisdictional prerequisite to filing an exemption claim. See *Performing Arts School of Metro. Toledo, Inc. v. Wilkins*, 104 Ohio St.3d 284, 2004-Ohio-6389, 819 N.E.2d 649. By contrast, we are not aware of any case that has held that the issue of the *use* of property on the lien date poses a jurisdictional question. To the contrary: the issue of how the property is used on the tax-lien date is a substantive issue that constitutes part of the merits of the exemption claim. Accordingly, issues relating to that use can be waived.

4. The application seeks exemption for three parcels for tax year 2002, with a tax-lien date of January 1, 2002. Remission is sought for two of the three parcels for tax years 2001 and 2000, and The Chapel did not seek additional remission beyond this. On remand, the BTA may furnish whatever additional clarification may be necessary concerning the amount of remission that pertains to the recreational acreage.

**{¶ 29}** The second remaining issue is that of the precise metes and bounds of the recreational acreage. The BTA concluded its decision with an extensive discussion of how to draw the line between taxable and exempt portions of The Chapel's property. Based on its analysis and representations by the parties, the BTA stated that it would "treat the recreational areas as 18.6795 acres" but had no need to further delineate the acreage. We hold that 18.6795 acres are subject to exemption based on recreational use by the public, and we remand to the BTA to effectuate that holding. On remand, the BTA will have jurisdiction to perform whatever further delineation of the exempt acreage may be necessary.

## Conclusion

**{¶ 30}** For the foregoing reasons, the BTA acted unreasonably and unlawfully when it affirmed the denial of The Chapel's claim for charitable-use exemption. We therefore reverse the decision of the BTA and remand for further proceedings.

Decision reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Leiby, Hanna, Rasnick, Towne & Evanchan and Stephen P. Leiby, for appellant.

Michael DeWine, Attorney General, and Ryan P. O'Rourke and Sophia Hussain, Assistant Attorneys General, for appellee.

_____