[Cite as *Dugan v. Franklin Cty. Bd. of Revision*, 2014-Ohio-4491.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Thomas Dugan et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 14AP-351 |
| v. | : | (BTA No. 2011-673) |
| Franklin County Board of Revision et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on October 9, 2014

*Thomas Dugan* and *Doris Dugan*, pro se.

*Ron O'Brien*, Prosecuting Attorney, and *William J. Stehle*, for appellees.

APPEAL from the Ohio Board of Tax Appeals

SADLER, P.J.

{¶ 1} Appellants, Thomas Dugan and Doris Dugan, pro se, appeal from a decision and order of the Ohio Board of Tax Appeals ("BTA") affirming a decision of appellee, Franklin County Board of Revision ("BOR"), which dismissed appellants' complaint for lack of jurisdiction. For the following reasons, we affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Appellants, age 65, owned and occupied a residence in Upper Arlington on January 1, 2007. In May 2007, appellants purchased and moved into a newly built condominium home in Hilliard. The Hilliard parcel had been subdivided on February 22, 2007 from a larger parcel owned by the condominium developer. There is no dispute that the Hilliard parcel did not exist as a stand-alone parcel on January 1, 2007. In May 2007,

appellants applied for homestead exemption for the Hilliard parcel for tax year 2007. Approximately one month after submitting their application, appellants sold their Upper Arlington residence.

{¶ 3} In October 2007, the Franklin County Auditor ("auditor") denied appellants' application for homestead exemption because the "Applicant's name [was] not on [the] deed [for the Hilliard parcel] as of January 1, 2007." (Oct. 16, 2007 Certificate of Denial.)  Appellants appealed the denial through the filing of a complaint at the BOR. Following a hearing, the BOR dismissed appellants' complaint for want of jurisdiction because "[the Hilliard parcel] did not appear on the tax list and duplicate for tax lien date January 1, 2007." (Mar. 8, 2011 BOR decision.)  Appellants appealed to the BTA, and, following a hearing, the BTA affirmed the BOR's dismissal of appellants' complaint, stating:

> Upon review of the record, we are constrained to conclude that the BOR properly dismissed the appellants' complaint because the subject property did not exist on the January 1, 2007 tax lien.  The record before us establishes that the subject property did not exist on January 1, 2007 because it was part of a single, larger parcel under residential development at the time.  The statutory transcript demonstrates that parcel number 450-283717, i.e., the subject property, was not created until February 22, 2007, which further supports a finding that the subject property did not exist on January 1, 2007.  Although the appellants correctly noted that the homestead exemption statute was silent as to a date on which the subject property had to exist, as *Episcopal School of Cincinnati* [*v. Levin*, 117 Ohio St.3d 412, 2008-Ohio-939,] makes clear, "the general proposition [is that] the taxable or exempt status of property should be determined as of the tax lien date, which is January 1 of whatever tax year is at issue."  Id.  Therefore, we conclude that the BOR properly determined that it lacked jurisdiction to consider the merits of the complaint.

(Footnote omitted.)  (BTA Decision and Order, 3-4.)

## II.  ASSIGNMENTS OF ERROR

{¶ 4}  In a timely appeal, appellants assert the following six assignments of error:

> 1. Appellees erred in ruling that the Franklin County Board of Revision had no jurisdiction to entertain Appellants' appeal

from an adverse determination denying an award of tax reduction.

2. Appellees erred in requiring that Appellants have owned a residence both on the date of their application and on the tax lien date for their parcel as a prerequisite for tax relief.

3. Appellees erred in identifying January 1, 2007 as the tax lien date for their parcel in 2007, the year of their application.

4. Appellees erred in adopting a severely restrictive interpretation of the legislative scheme to afford remedial tax relief to elderly and disabled taxpayers.

5. Appellees erred when, after having (incorrectly) determined that Appellants were not entitled to tax reduction in 2007 because they had not resided in the same residence on January 1, 2007 as on the date of their application, they did not evaluate Appellants' entitlement on the basis of the residence in which Appellants *did* reside on that date.

6. The Board of Tax [A]ppeals erred in construing the testimony of Appellant Thomas Dugan at the hearing before the Board of Revision to mean that he "filed the exemption application for the subject property, i.e[.], the newly built home in Columbus."

(Emphasis sic.)

## III. DISCUSSION

{¶ 5} An appellate court reviews a decision of the BTA to determine if it is reasonable and lawful. *Piepho v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 13AP-818, 2014-Ohio-2908, ¶ 4, citing *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, ¶ 10. An appellate court will not disturb a BTA decision " ' "unless it affirmatively appears from the record that such decision is unreasonable or unlawful." ' " *Id.*, quoting *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 1, 2014-Ohio-853, ¶ 48, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, ¶ 17.

{¶ 6} " 'The BTA's findings of fact are to be affirmed if supported by reliable and probative evidence, and the BTA's determination of the credibility of witnesses and its weighing of the evidence are subject to a highly deferential abuse-of-discretion review on

appeal.' " *Id.* at ¶ 5, quoting *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 129 Ohio St.3d 3, 2011-Ohio-2316, ¶ 18, citing *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 125 Ohio St.3d 103, 2010-Ohio-1040, ¶ 15, and *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, ¶ 14; *Wingates L.L.C. v. South-Western City Schools Bd. of Edn.*, 10th Dist. No. 10AP-846, 2011-Ohio-2372. However, an appellate court will reverse a BTA decision if it is based on an incorrect legal conclusion. *Piepho* at ¶ 5, citing *The Chapel v. Testa*, 129 Ohio St.3d 21, 2011-Ohio-545, ¶ 9.

{¶ 7} A brief history of the enactment and expansion of the homestead exemption, as set forth by the Supreme Court of Ohio in *Gilman v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 154, 2010-Ohio-4992, is in order. Commencing in 1971, the General Assembly provided real property tax relief to residential property owned and occupied by persons 65 and over. *Id.* at ¶ 9. This tax relief, referred to as the homestead exemption, took the form of a credit against real property taxes that was tied to the income of the owner-occupants of the property. *Id.*, citing Am.Sub.H.B. No. 475, 134 Ohio Laws, Part II, 1485, 1490-1494. The tax reduction was originally available only because of the age of the owner-occupants; however, in 1975, the General Assembly expanded the tax reduction to permanently and totally disabled homeowners. *Id.*, citing Am.Sub.H.B. No. 23, 136 Ohio Laws, Part I, 1409-1413. Subsequently, in 1991, the General Assembly extended the benefit to certain surviving spouses who did not independently qualify for the reduction. *Id.*, citing Am.Sub.H.B. No. 66, 144 Ohio Laws, Part II, 2877.

{¶ 8} In 1999, the General Assembly extended the tax credit to mobile and manufactured homes, and in 2001, the tax break was broadened to encompass units in a housing cooperative. *Id.* at ¶ 10, citing Am.Sub.S.B. No. 142, 147 Ohio Laws, Part IV, 7986, 8002; Am.Sub.H.B. No. 595, 148 Ohio Laws, Part III, 6422. Finally, in 2007, the General Assembly broadened the availability of the tax credit by eliminating the income test as a restriction on its availability. *Id.* With this modification, the homestead exemption now affords tax relief on $25,000 of a property's value whenever the owner-occupants satisfy the age or disability criteria. *Id.*, citing R.C. 323.151 to 323.153, as amended, 127th General Assembly, Am.Sub.H.B. No. 119.

{¶ 9} Because appellants' contentions call for examination of the statutory scheme governing the homestead exemption, such presents an issue of law that we determine de novo on appeal. *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, ¶ 10 ("Statutory construction presents a question of law that we determine de novo.").

{¶ 10} In interpreting statutes, a court's principle concern is the legislative intent in enacting the statutes. *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, ¶ 16. To determine that intent, a court must first look at the words of the statutes themselves. *Id.* We are also mindful that all statutes relating to the same general subject matter must be read in pari materia. *Id.* In construing statutes together, a court must give them " 'a reasonable construction as to give proper force and effect to each and all such statutes.' " *State v. Patterson*, 81 Ohio St.3d 524, 525-26 (1998), quoting *Johnson's Markets, Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 35 (1991), citing *Maxfield v. Brooks*, 110 Ohio St. 566 (1924). The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. *Johnson's Markets* at 35. "All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. * * * This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict." *Id.* We now apply these precepts to the statutory scheme governing the homestead exemption found, as relevant here, in R.C. 323.151 through 323.154.[1] We apply the statutory scheme in effect for tax year 2007, the year appellants filed their application.

{¶ 11} The tax relief at issue applies to real property taxes imposed on a "homestead," which is defined as various types of dwellings together with whatever surrounding land "not exceeding one acre, as is reasonably necessary for the use of the dwelling or unit as a home." R.C. 323.151(A)(2). Pursuant to R.C. 323.151(A)(1), the dwelling must be "owned and occupied as a home by an individual whose domicile is in this state." R.C. 323.151(A)(2) addresses who qualifies as an "owner" by stating that "[a]n owner includes a holder of one of the several estates in fee, a vendee in possession under a

---

[1] The statutory scheme governing the homestead exemption includes R.C. 323.151 through 323.159. However, only the provisions in R.C. 323.151 through 323.154 are germane to this appeal.

purchase agreement or a land contract, a mortgagor, a life tenant, one or more tenants with a right of survivorship, tenants in common, and a settlor of a revocable or irrevocable inter vivos trust holding the title to a homestead occupied by the settlor as of right under the trust."

{¶ 12} R.C. 323.152(A)(1)(b) qualifies persons 65 years of age or older for the homestead exemption.  As relevant here, R.C. 323.152(A)(2) provides that "[r]eal property taxes on a homestead owned and occupied * * * by a [qualified] person * * * shall be reduced for each year for which the owner obtains a certificate of reduction from the county auditor under section 323.154 of the Revised Code."

{¶ 13} R.C. 323.153 sets forth the process by which qualified individuals may obtain the tax reduction.  "To obtain a reduction in real property taxes under division (A) * * * of section 323.152 of the Revised Code * * *, the owner shall file an application with the county auditor of the county in which the owner's homestead is located."  R.C. 323.153(A).  "The * * * application * * * shall be in the form of a signed statement[,] * * * shall be filed after the first Monday in January and not later than the first Monday in June[, and] shall be filed in the year for which the reduction is sought."  R.C. 323.153(A)(3).  R.C. 323.153(A)(3) further provides that "[t]he statement shall be on a form, devised and supplied by the tax commissioner, which shall require no more information than is necessary to establish the applicant's eligibility for the reduction in taxes and the amount of the reduction, and, for a certificate of reduction issued under section 323.154 of the Revised Code, shall include an affirmation by the applicant that ownership of the homestead was not acquired from a person, other than the applicant's spouse, related to the owner by consanguinity or affinity for the purpose of qualifying for the real property * * * tax reduction provided for in division (A) * * * of section 323.152 of the Revised Code."

{¶ 14} R.C. 323.154 addresses both the approval and denial of applications for tax reduction.  Regarding approval, R.C. 323.154 provides that "the auditor shall issue a certification of reduction in taxes in triplicate for each person who has complied with section 323.153 of the Revised Code and whose homestead, as defined in division (A)(1) of section 323.151 of Revised Code, * * * the auditor finds is entitled to a reduction in real property * * * taxes for that year under section 323.152 of the Revised Code. * * * [I]n the

case of a homestead entitled to a reduction under division (A) of that section, the certificate shall state the taxable value of the homestead on the first day of January of that year, the total reduction in taxes for that year under that section, the tax rate that is applicable against such homestead for that year, and any other information the tax commissioner requires."

{¶ 15} Regarding denial, R.C. 323.154 states, in relevant part, that "[i]f an application * * * is not approved, or if the county auditor otherwise determines that a homestead * * * does not qualify for a reduction in taxes under division (A) * * * of section 323.152 of the Revised Code, the auditor shall notify the applicant of the reasons for denial * * *.  If an applicant believes that the application for reduction has been improperly denied * * *, the applicant may file an appeal with the county board of revision."

{¶ 16} In their first assignment of error, appellants contend that in dismissing their complaint for lack of jurisdiction, the BOR and the BTA disregarded the statutory duty set forth in R.C. 323.154 to consider appellants' appeal from the auditor's denial of their application for the homestead exemption.  Contrary to their proposition, the dismissal of appellants' complaint by the BOR and the BTA on jurisdictional grounds does not equate to a lack of consideration of their appeal.  Both the BOR and the BTA considered appellants' appeal from the auditor's denial; however, in doing so, both concluded that they lacked jurisdiction to consider the merits of appellants' complaint because the Hilliard parcel did not exist on the January 1, 2007 tax lien date.  Because the BOR and the BTA considered appellants' appeal from the auditor's denial of their application for the homestead exemption in compliance with R.C. 323.154, we overrule the first assignment of error.

{¶ 17} Appellants' second through fifth assignments of error are interrelated and, thus, will be considered together.  In them, appellants contend the BTA erred in affirming the BOR's dismissal of their complaint for lack of jurisdiction on grounds that the Hilliard parcel did not exist on the tax lien date of January 1, 2007.  Appellants challenge the BTA's reliance on *Episcopal School of Cincinnati v. Levin,* 117 Ohio St.3d 412, 2008-Ohio-939, for the proposition that " "the taxable or exempt status of property should be determined as of the tax lien date, which is January 1 of whatever tax year is at issue.' "

(BTA Decision and Order, 4, quoting *Episcopal School of Cincinnati* at ¶ 23.) Appellants maintain that the tax lien date on the Hilliard parcel is irrelevant to a determination of homestead exemption entitlement because the homestead exemption is intended by the General Assembly as a personal benefit to those who qualify—in this case—by age. Appellants contend the BTA improperly conflated the *in personam* process of homestead exemption entitlement with the *in rem* process of real estate valuation and assessment. Appellants assert that, because they qualified for the homestead exemption premised upon their age in 2007, the year they filed the application, they were entitled to that exemption for any real estate taxes paid by them on any homestead they owned and occupied during that year. Accordingly, appellants argue they were entitled to the homestead exemption for real estate taxes paid on either their Hilliard home or their Upper Arlington home, as they owned and occupied those residences at some point during 2007. Appellants further argue, even if the BTA was correct in interpreting the homestead exemption statutes to require an applicant to own the homestead on January 1 of the relevant tax year, that date was not the correct tax lien date applicable to appellants' Hilliard parcel. Appellants contend that, pursuant to R.C. 323.11, a new tax lien date was imposed on February 22, 2007, the date the Hilliard parcel was subdivided from the larger parcel owned by the condominium developer.

{¶ 18} R.C. 323.151 through 323.154, read in pari materia, belie appellants' claims that the January 1, 2007 tax lien date and their ownership of the Hilliard parcel on that date are irrelevant to a determination of their entitlement to the homestead exemption. First, in compliance with R.C. 323.153(A)(3) and under the authority of R.C. 5715.30, the tax commissioner promulgated the homestead application form, DTE 105A, which specifically requires the applicant to "declare under the penalty of perjury that (1) I occupied this property as my principal place of residence on Jan. 1 of the year(s) for which I am requesting the homestead exemption, (2) I currently occupy this property as my principal place of residence, (3) I did not acquire this homestead from a relative or in-law, other than my spouse, for the purpose of qualifying for the homestead exemption, and (4) I have examined this application, and to the best of my knowledge and belief, this application is true, correct and complete." Thus, contrary to appellants' assertion that the application "does not inquire of an applicant where he lived on January 1 of the

application year," the application clearly delineates that the applicant must occupy the property for which the homestead exemption is sought as the applicant's principal place of residence on January 1 of the relevant tax year. (Appellants' Brief, 22.)

{¶ 19} The accompanying instructions reinforce this requirement. Under the section entitled "**Qualifications for the Homestead Exemption for Real Property**," the instructions state that the applicant must "own and have occupied your home as your principal place of residence on Jan. 1 of the year in which you file the application. *A person only has one principal place of residence*; your principal place of residence determines, among other things, where you are registered to vote and where you declare residency for income tax purposes." (Emphasis sic.) Although appellants' application for the homestead exemption is not part of the record, appellants attached a sample DTE 105A application to their brief, and both parties refer to the sample application in their briefs. Further, appellants do not dispute that they completed and signed a DTE 105A application form.

{¶ 20} Secondly, R.C. 323.154 also references the January 1 tax lien date. The statute provides that, upon approval of an application for the homestead exemption, the auditor must issue a certificate of reduction in taxes which states "the taxable value of the homestead on the first day of January of that year."

{¶ 21} Similarly, the statutory scheme governing administration of the homestead exemption program belies appellants' contention that the General Assembly intended the exemption as a personal benefit to qualifying applicants without regard to a particular homestead. We note initially that "[r]eal estate taxes are upon the land itself and not upon persons owning it." *Howard v. Dor El Realty Co.*, 20 Ohio App.2d 191, 193 (7th Dist.1969), citing *S. Ohio Savings Bank & Trust Co. v. Bolce*, 165 Ohio St. 201 (1956).

{¶ 22} Further, R.C. 323.151(A)(1) mandates that the dwelling for which the tax reduction is sought must be "owned and occupied as a home." R.C. 323.152(A)(2) similarly limits the tax reduction to "a homestead owned and occupied" by a qualified applicant. The application form referenced in R.C. 323.153(A)(3) requires the applicant to identify specific characteristics of the dwelling for which the tax reduction is sought,

including the type of dwelling,[2] the address of the dwelling, and the applicant's ownership interest in the dwelling.[3]   The application also requires identification of any "additional home(s)" owned by the applicant.   In addition, the application requires the applicant to declare under penalty of perjury that the applicant occupied the property as the applicant's principal place of residence, and the instructions for completing the application define principal place of residence.

{¶ 23} R.C. 323.154 also ties the homestead exemption to real property.   The statute twice references entitlement of the "homestead" to the reduction in real estate taxes.   R.C. 323.154 directs the auditor to issue a certificate of reduction to a person who has complied with R.C. 323.153 and "whose homestead * * * the auditor finds is entitled to a reduction."   The statute then addresses the contents of a certificate of reduction issued "in the case of a homestead entitled to a reduction."   Contrary to appellants' contentions, the statutes governing the procedures for administering the homestead exemption program clearly contemplate application of the tax reduction to a particular homestead owned and occupied by a qualified applicant on January 1 of the relevant tax year.

{¶ 24} As noted above, appellants' application for the homestead exemption is not part of the record.   However, other record evidence establishes that appellants sought the tax reduction on the Hilliard parcel.   For example, the auditor's certificate of denial lists the tax district, parcel number, and address of the Hilliard parcel, and both the BOR hearing worksheet and dismissal letter reference the parcel number of the Hilliard parcel. In addition, appellants' notice of appeal from the BOR to the BTA indicates that the appeal concerns the Hilliard parcel, and Mr. Dugan admitted at the BOR and BTA hearings that the application form sought the homestead exemption for the Hilliard parcel.   Thus, appellants' contention that they were entitled to the homestead exemption

---

[2] DTE 105A requires the applicant to identify whether the "[t]ype of home" is a (1) single family dwelling, (2) unit in a multi-unit dwelling, (3) condominium, (4) unit in a housing cooperative, (5) manufactured or mobile home, or (6) land under a manufactured or mobile home.

[3] DTE 105A provides that "[i]n order to be eligible for the homestead exemption, one of the following statements must apply to the applicant's interest in the property.  Property that is owned by a corporation, partnership, limited liability company or other legal entity does not qualify for the exemption."  The form requires the applicant to identify one of the following five modes of ownership: (1) an individual named on the deed/title, (2) a purchaser under a land installment contract, (3) a life tenant under a life estate, (4) a mortgagor (borrower) for an outstanding mortgage, (5) the settlor under a revocable or irrevocable inter vivos trust, where the application has complete control of the assets in the trust, or (6) a stockholder in a qualified housing cooperative.

for real estate taxes paid on either their Hilliard condominium home or their Upper Arlington home is unavailing.

{¶ 25} Appellants' contention that the January 1 tax lien date is inapplicable to the Hilliard parcel is similarly without merit. Appellants maintain that, pursuant to R.C. 323.11, a new tax lien date was imposed on February 22, 2007, the date the Hilliard parcel was subdivided from the larger parcel owned by the condominium developer. R.C. 323.11 states, in relevant part, that "[t]he lien of the state for taxes levied for all purposes on the real and public utility tax list and duplicate for each year shall attach to all real property subject to such taxes on the first day of January, annually * * *. Taxes may be apportioned in case of transfer of a part of any tract or lot of real estate, in which case the lien of such taxes shall extend to the transferred part and the remaining parts only to the extent of the amounts allocated to such respective parts." Appellants cite no authority construing R.C. 323.11 in the manner they advocate, and our independent research reveals no such construction. Contrary to appellants' assertion, the plain language of R.C. 323.11 does not establish a new tax lien date for newly platted parcels. Rather, the statute merely permits apportionment of taxes between portions of a parcel that existed as of January 1, based upon the value as of January 1.

{¶ 26} For the foregoing reasons, appellants' second, third, fourth, and fifth assignments of error are overruled.

{¶ 27} In their sixth and final assignment of error, appellants contend the BTA misconstrued Mr. Dugan's testimony before the BOR and the BTA to mean that he filed the homestead exemption application for the Hilliard parcel. We note initially that the BTA's decision does not specifically state that Mr. Dugan *testified* that he filed the application for the Hilliard parcel. Rather, the decision states that "Mr. Dugan *filed* the exemption application for the subject property, i.e., the newly built home in Columbus." (Emphasis added.) (BTA Decision and Order, 1-2.) As noted above, the BTA's statement in this regard is supported by the record. Further, a review of the BTA hearing transcript reveals that Mr. Dugan testified that he filed the application for the Hilliard parcel rather than the Upper Arlington parcel: "My actual residence, strictly speaking, would have been the condominium in [Hilliard] because we were literally there and had been there for two or three or four days on the day that I mailed in the application, but we still owned the

other residence, and, of course, we had owned that residence on January 1st of that year. But I filed the application and listed my residence as the condominium in [Hilliard]." (Tr. 7-8.) When asked on cross-examination if he had ever applied for the homestead exemption on the Upper Arlington property, Mr. Dugan responded, "No. I would have if— The application which I filed in May of '07 listed the criteria set forth in the statute. It says, 'Are you 65 years of age or older, and do you own the home?' If it had mentioned anything about January 1st, * * * I would simply have used the Arlington address for the house that I still then owned, and which I did own on January 1st, but that was not made known to me until after—that criteria was not made known to me until after—well, until the time that I was denied in October of that year." (Tr. 12.) Appellants' contention that they have consistently asserted the position that they were entitled to the homestead exemption on either the Hilliard home or the Upper Arlington home does not mean the BTA misconstrued Mr. Dugan's testimony. Mr. Dugan testified before the BOR and the BTA that appellants filed the application for the homestead exemption for the Hilliard parcel. The sixth assignment of error is overruled.

## IV. CONCLUSION

{¶ 28} For the reasons set forth above, we conclude the BTA acted reasonably and lawfully when it affirmed the determination of the BOR dismissing appellants' complaint for lack of jurisdiction. Accordingly, having overruled appellants' six assignments of error, we affirm the decision of the Ohio Board of Tax Appeals.

*Judgment affirmed.*

CONNOR and O'GRADY, JJ., concur.

_____