[Cite as *State v. Foster*, 2014-Ohio-530.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

DANIELLE FOSTER

      Defendant-Appellant


Appellate Case No.    25655

Trial Court Case No.   2012-CRB-6676


(Criminal Appeal from
 Municipal Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of February, 2014.

. . . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant City Prosecutor, 335 West Third Street, Room 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

RUSS B. COPE, Atty. Reg. No. 0083845, 6826 Loop Road, Dayton, Ohio 45459
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}   Defendant-appellant, Danielle Foster, appeals from her conviction in the Dayton Municipal Court on one count of resisting arrest, one count of domestic violence, one count of assault, and two counts of disorderly conduct on grounds that she was denied effective assistance of counsel.   For the reasons outlined below, we affirm the trial court's judgment.

**Facts and Course of Proceedings**

{¶ 2}   In August 2012, Foster was charged with resisting arrest in violation of R.C. 2921.33(A), a second-degree misdemeanor; obstructing official business in violation of R.C. 2921.31(A), a second degree-misdemeanor; domestic violence in violation of R.C. 2919.25(A)(1), a first-degree misdemeanor; assault in violation of R.C. 2903.13(A), a first degree misdemeanor; endangering children in violation of R.C. 2919.22(A), a first degree misdemeanor; and  two counts of disorderly conduct in violation of R.C. 2917.11(A)(1), both fourth-degree misdemeanors.   The charges arose from an August 10, 2012 incident at the Montgomery County Job Center, wherein Foster was confronted by a deputy sheriff and security personnel while disciplining her three-year-old son, K.   Foster pled not guilty to all of the charges and the matter proceeded to a bench trial.   The following facts were elicited at trial.

{¶ 3}   On August 10, 2012, Deputy Edward Hunter, a Montgomery County Sheriff's Deputy assigned to the Job Center, testified that he heard yelling and smacking sounds coming from a public restroom of the Job Center while he was in his office approximately 30 feet away. He testified that another security officer and clients of the Job Center could also hear Foster yelling outside of the restroom.   After hearing the commotion, Deputy Hunter knocked on the

restroom door three times, announced he was with the sheriff's office, and then entered. Upon entering the restroom, he observed Foster holding K.'s arm in a position as if she was going to strike him. Deputy Hunter then testified that Foster became agitated when he asked her what was going on, and that she indicated in a loud, aggravated tone that it was none of his business how she disciplined her child. In addition, when he asked her to lower her voice and calm down, Deputy Hunter claimed that Foster yelled: "F*** the Job Center and everybody in it." Trans. (Oct. 29, 2012), p. 7. At that point, Deputy Hunter asked Foster to leave.

{¶ 4} Before escorting her out of the Job Center, Deputy Hunter testified that he had Foster come to his office and complete paperwork for a trespass notice, which would prevent her from returning. When he explained the conditions of the trespass notice, Foster refused to sign the form and proceeded to leave his office with K. and her other two children. Deputy Hunter testified that as he escorted Foster out of the building, she began screaming profane words and drawing further attention to herself. According to his testimony, Deputy Hunter repeatedly asked Foster to stop her disruptive conduct, but she continued to yell and call him vulgar names.

{¶ 5} Deputy Hunter further testified that he and a private security officer, Donald Scammahorn, followed Foster as she exited the Job Center building. After reaching the exit, both officers stopped and watched Foster as she walked away. While she was walking away, Deputy Hunter testified that he observed Foster jerking and pulling her son by the arm and screaming at the officers to "leave her the f*** alone." *Id.* at p. 10. Deputy Hunter also saw Foster stop in the middle of a parking lot and strike her son forcefully three times on his lower back and buttocks. He testified that K. was not misbehaving when Foster struck him. In addition, he testified that Foster appeared to be out of control and K. appeared to be in pain and

was screaming.

{¶ 6}    Upon seeing Foster strike K., Deputy Hunter testified that he became concerned for the child's well-being.  Accordingly, he and Officer Scammahorn started to approach Foster in order to take her into custody for child endangerment.  At this point in time, Foster and her children were inside her vehicle.  Deputy Foster testified that Officer Scammahorn instructed Foster not to start her vehicle, but that she ignored the instruction and backed up her vehicle while screaming at them.  In response, Deputy Hunter moved toward the vehicle and put his hand up instructing Foster to stop.  Foster slowed down, but did not stop, thus prompting Deputy Hunter to pull on the doorhandle, which was unlocked.  Foster then stopped the vehicle, and Deputy Hunter advised her that she was under arrest.  He then instructed Foster to exit the vehicle, but she failed to comply.  Deputy Hunter testified that he was eventually able to pull her from the vehicle with the assistance of Officer Scammahorn.  He claimed that Foster made the arrest difficult by kicking and using profanity.  Officer Scammahorn provided testimony that was consistent with the testimony of Deputy Hunter.

{¶ 7}    In her defense, Foster testified and denied engaging in any untoward or loud, disorderly conduct.  However, she admitted that she was offended when Deputy Hunter asked her whether she had a child protective services case.  She also admitted that she was frustrated by K.'s behavior and by the fact that she was being prevented from "tak[ing] care of [her] business."  Trans. (Oct. 29, 2012), p. 41.  Foster also denied striking K. in the parking lot.  In addition, she denied screaming and refusing to comply with the officers when they asked her to stop her vehicle.  Foster testified that the officers did not ask her to exit her vehicle, but instead they tried to take her keys and "yanked" her out.  *Id*. at 43.  She also testified that she was upset

during the arrest because she was seven months pregnant and concerned about her unborn child.

{¶ 8}  The trial court found the officers' testimony to be credible and consistent, and found that Foster's testimony lacked credibility.   Based on the officers' testimony, the trial court found Foster guilty of domestic violence, assault, resisting arrest, and two counts of disorderly conduct.   The trial court, however, found Foster not guilty of obstructing official business and child endangerment.

{¶ 9}  Foster appeals from her conviction and raises one assignment of error.

**Assignment of Error No. I**

{¶ 10}  Foster's sole assignment of error states as follows:

DEFENDANT-APPELLANT WAS DEPRIVED OF HER RIGHTS UNDER THE 6TH AMENDMENT TO THE U.S. CONSTITUTION TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO REQUEST THAT [sic] COURT INQUIRE INTO THE COMPETENCY OF DEFENDANT-APPELLANT AT TIME OF THE ALLEGED OFFENSES BY FAILING TO FILE A PLEA OF NOT GUILTY BY REASON OF INSANITY AND FAILURE OF COUNSEL TO PRESENT ANY EVIDENCE AS TO SOCIAL OR MEDICAL HISTORY OF THE DEFENDANT-APPELLANT IN MITIGATION FOR HER ACTIONS.

{¶ 11}  In her single assignment of error, Foster argues that her trial counsel was ineffective in failing to: (1) investigate potential social and medical issues that could have accounted for Foster's behavior; (2) present mitigating evidence as to her behavior; (3) file a

motion to request the court to determine Foster's competency; and (4) pursue an insanity defense.

{¶ 12}   We review alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).   Pursuant to these cases, in order to reverse a conviction based on ineffective assistance of counsel, a defendant first "must show that counsel's representation fell below an objective standard of reasonableness."   *Strickland* at 688.   Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694. Furthermore, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "   *Id*. at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 13}   Upon reviewing the record, we do not find that the conduct Foster complains of qualifies as ineffective assistance of counsel.   Foster's first argument, that trial counsel failed to investigate any social or medical issues that may have explained her behavior on August 10, 2012, is not supported by the record.   While effective representation carries with it a duty to make reasonable investigations, *Id*. at 691, there is nothing in the record indicating that Foster's trial counsel did not perform a reasonable investigation of any social or medical issues. Therefore, Foster failed her burden to overcome the presumption that counsel's representation

fell within the wide range of reasonable professional assistance. Accordingly, Foster's first argument lacks merit and is overruled.

{¶ 14} Foster's second argument, that counsel failed to present evidence mitigating her behavior, also lacks merit. It is well established that the presentation of mitigating evidence is a matter of trial strategy and " '[t]he decision to forgo the presentation of additional mitigating evidence does not itself constitute ineffective assistance of counsel.' " *State v. Hand,* 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 240, quoting *State v. Keith*, 79 Ohio St.3d 514, 536, 684 N.E.2d 47 (1997). Therefore, " 'a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel.' " *State v. Ellison*, 2d Dist. Montgomery No. 25638, 2013-Ohio-5455, ¶ 30, quoting *State v. Hill*, 2d Dist. Greene No.2004 CA 79, 2005-Ohio-3176, ¶ 13.

{¶ 15} In this case, Foster's defense strategy at trial consisted of her denying that she engaged in the extreme behavior reported by the Job Center officers. Had trial counsel introduced evidence mitigating and explaining her behavior, Foster's testimony claiming that she did not engage in such behavior would have been completely contradicted. In other words, the presentation of mitigating evidence was inconsistent with the defense's trial strategy and theory of the case. Because trial strategy cannot form the basis of an ineffective assistance claim, Foster's second argument also lacks merit and is overruled.

{¶ 16} Under her third argument, Foster alleges trial counsel was ineffective in failing to question her competency to stand trial and in failing to request a competency hearing. "A defendant is competent to stand trial if he is capable of understanding the nature and objective of the proceedings against him and of assisting in his defense. * * * Absent evidence to the contrary,

a defendant is presumed to be competent. R.C.2945 .37(G)." *State v. Skatzes*, 2d Dist. Montgomery No. 15848, 2003-Ohio-516, ¶ 360, citing *State v. Carter*, 89 Ohio St.3d 593, 603, 734 N.E.2d 345 (2000); R.C. 2945.37(G). If the record fails to establish that the defendant displayed a sufficient indicia of incompetency to stand trial, then trial counsel's failure to request a competency hearing does not constitute deficient performance. *State v. Thomas*, 97 Ohio St.3d 309, 2002–Ohio–6624, 779 N.E.2d 1017, ¶ 41; *State v. Pennington,* 2d Dist. Montgomery No. 24090, 2011-Ohio-4445, ¶ 19-20.

{¶ 17} In the instant case, Foster did not display any indicia of incompetency during trial to warrant a competency hearing. In addition, there is nothing in the record to indicate that she suffered from a mental illness or had difficulty understanding the nature and objective of the legal proceedings. Moreover, the record is devoid of any evidence that she exhibited any difficulty in assisting her defense. In fact, Foster testified at trial and responded to questions in a manner that did not call her sanity into question. Nevertheless, Foster argues the fact that she denied any wrongdoing is a basis for finding her incompetent. However, the fact that she denied wrongdoing relates to her credibility, not her competency. Therefore, because there is nothing in the record indicating that Foster lacked competency, we do not find that trial counsel's failure to request a competency hearing fell below an objective standard of reasonableness. Accordingly, Foster's third argument is likewise overruled.

{¶ 18} Foster's fourth argument, that trial counsel was ineffective in failing to pursue an insanity defense, also lacks merit. As we explained in *State v. Robinson*, 2d Dist. Montgomery No. 17393, 2001 WL 62569 (Jan. 26, 2001):

This court will not second-guess strategic decisions made by trial counsel. See

*State v. Mason* (1998), 82 Ohio St.3d 144, 161. See, also, *Strickland, supra*, at 690. In general, trial counsel's failure to pursue an insanity defense is not, per se, ineffective assistance of counsel. See *State v. Decker* (1986), 28 Ohio St.3d 137, *State v. Sneed* (1992), 63 Ohio St.3d 3, and *State v. Wong* (1994), 95 Ohio App.3d 39. A person is not guilty of an offense by reason of insanity only if he proves that, at the time of the commission of the offense, he did not know, as a result of severe mental disease or defect, the wrongfulness of his acts. R.C. 2901.01(A)(14). The fact that the trial strategy selected proved to be unsuccessful does not equate per se to a denial of effective assistance of counsel. See *State v. Frazier* (1991), 61 Ohio St.3d 247, 255. *Id*. at *4.

{¶ 19} Here, the record indicates that Foster's trial counsel had legitimate reasons not to pursue an insanity defense. First, there is nothing in the record indicating that Foster suffered from a severe mental illness that caused her to not understand the wrongfulness of her acts. Therefore, it is unlikely an insanity defense would have been successful. In addition, an insanity defense would have conflicted with Foster's defense strategy of pleading not guilty and denying all allegations regarding her behavior. "It is acceptable trial strategy to offer a not guilty defense, and we will not second guess that strategy on appeal." *Id*. at *5. Because trial strategy cannot be the basis of an ineffective assistance claim, Foster's fourth and final argument is overruled.

{¶ 20} For the foregoing reasons, we find no merit to any of the four arguments advanced on appeal. Accordingly, Foster's sole assignment of error is overruled.

**Conclusion**

{¶ 21}  Having overruled Appellant Danielle Foster's sole assignment of error alleging ineffective assistance of counsel, we hereby affirm the judgment of the trial court.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ.,   concur.

Copies mailed to:

Amy B. Musto
Russ B. Cope
Hon. Carl Sims Henderson