[Cite as *State v. Moten*, 2019-Ohio-1473.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 2018-CA-19 & |
| | : | 2018-CA-20 |
| v. | : | |
| | : | Trial Court Case Nos. 2017-CR-447 & |
| AARON MOTEN | : | 2017-CR-744B |
| | : | |
| Defendant-Appellant | : | (Criminal Appeal from |
| | : | Common Pleas Court) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of April, 2019.

. . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

MICHAEL T. COLUMBUS, Atty. Reg. No. 0076799, 130 East Second Street, Suite 2103, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} In these consolidated cases, Aaron Moten appeals from the trial court's separate judgments sentencing him to an aggregate prison term of 72 months in Clark C.P. No. 17-CR-447, and to another aggregate prison term of 72 months in Clark C.P. No. 17-CR-744B, with those sentences to be served consecutively, for a total of 144 months (12 years) in prison. The judgment of the trial court will be affirmed.

### Factual and Procedural Background

{¶ 2} On August 7, 2017, a Clark County grand jury indicted Moten in Clark C.P. No. 17-CR-447 on five drug-related charges: 1) Count One, trafficking in cocaine in violation of R.C. 2925.03(A)(2), a fourth-degree felony; 2) Count Two, trafficking in heroin in violation of R.C. 2925.03(A)(2), a fourth-degree felony; 3) Count Three, possession of cocaine in violation of R.C. 2925.11(A), a fourth-degree felony; 4) Count Four, possession of heroin in violation of R.C. 2925.11(A), a fourth-degree felony; and 5) Count Five, illegal conveyance of drugs of abuse onto the grounds of a specified governmental facility in violation of R.C. 2921.36(A)(2), a third-degree felony. All five charges in Case No. 17-CR-447 related to conduct alleged to have occurred on or about June 9, 2017.

{¶ 3} On November 27, 2017, a Clark County grand jury indicted Moten (along with co-defendant Jamie Danielle Lavender) in Clark C.P. No. 17-CR-744B for: 1) Count One, trafficking in cocaine in violation of R.C. 2925.03(A)(2), a third-degree felony; 2) Count Two, trafficking in heroin in violation of R.C. 2925.03(A)(2), a third-degree felony; 3) Count Three, possession of cocaine in violation of R.C. 2925.11(A), a third-degree felony; and 4) Count Four, possession of heroin in violation of R.C. 2925.11(A), a third-degree felony. The indictment also included forfeiture specifications as to three quantities of cash seized

from Moten and a vehicle. The charges against Moten in Case No. 17-CR-744B related to conduct alleged to have occurred on or about June 2, 2017. Because Case No. 17-CR-744B involved drugs in a greater quantity (i.e., 10 but less than 20 grams of cocaine, and more than five but less than 10 grams of heroin), the offenses in that case carried higher felony classifications than those in Case No. 17-CR-447.

{¶ 4} During a pretrial conference on Case No. 17-CR-447, Moten's counsel proposed that the parties discuss a "potential global resolution" of the charges in that case and Case No. 17-CR-744B. (12/19/17 Pretrial Transcript ("Tr."), p. 6). Moten subsequently entered pleas of guilty in both cases (1/10/18 Plea Tr. p. 3), pursuant to a written plea agreement in each case.

{¶ 5} At the plea hearing, the State articulated the facts underlying Moten's offenses as follows:

[As to Case No. 17-CR-447,] on June 9, 2017, the Defendant was stopped * * * in Clark County, Ohio, for [a] window tint violation and driving under suspension. As the deputy was approaching the vehicle, the Defendant was making furtive movements and abruptly moved into the passenger seat. He then quickly got out of the vehicle and dropped a large amount of U.S. currency onto the ground. The currency totaled $590 in U.S. currency. He was arrested for driving under suspension and transported to the Clark County Jail.

Prior to being conveyed into the jail, deputies advised [Moten] of the ramifications of conveying contraband into the jail. As he was being changed out, a baggie was observed hanging from his buttocks. Inside the

bag was [sic] four baggies containing 1.3 grams of heroin and two baggies containing 8.35 grams of cocaine.

* * *

[As to Case 17-CR-744B], on June 2, 2017, at Clark County, Ohio, the Defendant was stopped as he was driving down an alleyway * * *, making furtive movements and driving erratically. As the officer approached the vehicle, he noticed the Defendant Aaron Moten in the backseat moving from the driver's seat to the rear of the Tahoe vehicle, Chevy Tahoe; and the Defendant's passenger, Miss Lavender, had on her person a multitude of drugs, that being 12.03 grams of cocaine[,] .99 grams of cocaine, 5.15 grams of heroin. [Moten] had on his person a substantial amount of cash, that being $729 in U.S. currency. Defendant Lavender had in her purse $4,020 in U.S. currency, and $1,535 in U.S. currency.

Both Defendant Lavender and Moten, after being Mirandized, wished to speak to the Drug Unit of the Springfield Police Division in order to work off their charges. Defendant Moten made statements to the effect that he hustles a lot and that's why he had such a large amount of cash.

(Plea Tr. pp. 8-11).

{¶ 6} In Case No. 17-CR-447, Moten pled guilty to the Count One and Two offenses of trafficking in cocaine and heroin, and the Count Five offense of illegal conveyance onto a governmental facility, in exchange for the dismissal of Counts Three and Four (the possession offenses). In Case No. 17-CR-744B, Moten pled guilty to the Count One and Two offenses of trafficking in cocaine and heroin, with Counts Three and

Four (the possession offenses) to be dismissed. Moten also agreed to the forfeiture of a total of $ 6,284 in U.S. currency seized in Case No. 17-CR-744B, as well as the forfeiture of $867 in cash from Clark C.P. No. 17-CR-770A, a third case then pending against Moten in the trial court that is not part of this appeal. In exchange for Moten's guilty pleas in Case Nos. 17-CR-447 and 17-CR-744B, the State agreed to dismiss Case No. 17-CR-770A.

{¶ 7} The presentence investigation ("PSI") revealed that Moten had a significant juvenile record as well as an extensive criminal history as an adult. His adult record included, among other offenses, prior drug possession convictions in 1996, 1997, 2012, and 2014; a prior drug trafficking conviction in 2014; four assault and one aggravated assault convictions; one aggravated menacing conviction; convictions for receiving stolen property, theft, and breaking and entering; a conviction for having weapons under disability; a conviction and an outstanding warrant for domestic violence; and convictions for fleeing/eluding police and failure to appear. Moten had served prison sentences for at least seven of those offenses. The PSI assessed Moten as being high risk for recidivism.

{¶ 8} The trial court thereafter sentenced Moten in Case No. 17-CR-447 to 18 months in prison on the Count One cocaine trafficking offense, 18 months on the Count Two heroin trafficking offense, and 36 months on the Count Five illegal conveyance offense, to "be served consecutively for a total of 72 months." In Case No. 17-CR-744B, the court sentenced Moten to 36 months on each of the two trafficking offenses, to be served "consecutively with [sic] each other and consecutive to the sentence imposed in 17-CR-0447."[1] The sentences imposed total 144 months.

---

[1] The trial court also ordered the forfeiture of the currency amounts seized from Moten (Disposition Tr. pp. 10-11); Moten has not challenged that portion of the judgment.

{¶ 9} Moten appeals those judgments, raising three assignments of error:

1) The trial court erred by sentencing [Moten] for trafficking in drugs and conveyance of prohibited items, which arose from a single animus;

2) [Moten]'s counsel's acquiescence to a prison sentence rendered his assistance ineffective; and

3) The imposition of consecutive sentences and the maximum sentence for [Moten]'s felony conviction[s] are [sic] not supported by clear and convincing evidence and is contrary to law.

### *Assignment of Error #1 – Merger of Single Animus Offenses*

{¶ 10} In his first assignment of error, Moten claims that the trial court erred by sentencing him in Case No. 17-CR-447 for both trafficking in drugs and illegal conveyance of drugs, offenses that Moten contends "arose from a single animus." Characterizing his conveyance of drugs into the jail as "involuntary," Moten maintains that the trial court should have merged the illegal conveyance offense with the trafficking offenses for purposes of sentencing.

*a. Standard of Review*

{¶ 11} Appellate courts conduct a de novo review of a trial court's merger determination under R.C. 2941.25. *State v. Shoecraft,* 2d Dist. Montgomery No. 27860, 2018-Ohio-3920, ¶ 55, citing *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. We afford no deference to the trial court's legal conclusions, and independently determine whether the facts of record satisfy the applicable legal standard. *Williams* at ¶ 25-27. A defendant bears the burden of establishing his entitlement to the protection afforded by the allied offense statute. *Id.* at ¶ 55, citing *State v. Washington,*

137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶ 12} We see no indication in the record that Moten objected in the trial court to the failure to merge those offenses. However, because a trial court's failure to merge allied offenses of similar import constitutes plain error, *see id.* at ¶ 56. Moten's apparent waiver of all but plain error as to the merger issue does not foreclose our review of this assignment of error. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.

*b. Applicable Substantive Law regarding Merger*

{¶ 13} Ohio's allied offenses statute provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶ 14} When considering whether multiple offenses are allied offenses of similar import, a court must ask three questions: " '(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?' " *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615,

49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. An affirmative answer to any of those questions permits separate convictions. *State v. Caldwell*, 2d Dist. Montgomery No. 27856, 2018-Ohio-4639, ¶ 22, citing *Earley* at ¶ 12 and *Ruff* at ¶ 31*.*

{¶ 15} As to the import or significance question, offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. In regard to animus, " '[w]here an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, [a] priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime.' " *State v. Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, ¶ 70 (2d Dist.), quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). In other words, "[i]f the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses." *State v. Hudson*, 2013-Ohio-2351, 993 N.E.2d 443, ¶ 54 (2d Dist.), quoting *State v. Lewis,* 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13.

### c. Moten's Merger Challenge

{¶ 16} Under substantially similar facts, another Ohio appellate court rejected the argument Moten makes here. *See State v. Deckard*, 2017-Ohio-8469, 100 N.E.3d 53 (4th Dist.). Like Moten, the defendant in *Deckard* argued that the trial court "committed reversible error by declining to merge [an] illegal conveyance violation with" other drug offenses (in Deckard's case, possession rather than trafficking). *Id.* at ¶ 46. The Court in *Deckard* described the relevant circumstances leading to that defendant's conviction as follows:

On February 29, 2016, Dustin A. Deckard was incarcerated at the Gallia County Jail. According to the trial testimony, he was booked in around 9:00 a.m. that day. During the evening hours, Deputy Cain noticed an odor similar to burning plastic. Appellant [Deckard] was in a cell block with approximately 8 to 10 other inmates.

* * *

* * * [Officer Cain] and another corrections officer, Debra Smith, handcuffed the inmates to bars for the officers' own safety, and searched each inmate individually. Officer Cain's searches of the inmates yielded nothing until he came to Appellant.

Officer Cain testified he performed an initial pat-down on Appellant and felt something. He retrieved a baggie with an unknown substance from Appellant's buttocks. * * *

*Id.* at ¶ 2, 34-36.

{¶ 17} After laboratory testing confirmed that the substance found on Deckard contained heroin and cocaine, *id.* at ¶ 3, Deckard was charged with, convicted of and sentenced for possession of heroin, possession of cocaine, and illegal conveyance of drugs onto the grounds of a detention facility. *Id.* at ¶ 1.

{¶ 18} Considering Deckard's contention on appeal that his possession and conveyance of the drugs constituted "a single act, committed with a single state of mind," *id.* at ¶ 48, the Fourth District Court explained its reasoning to the contrary:

* * * The inference arising at trial was that Appellant possessed the two distinct drugs outside of the jail. His "conveyance" or "movement" of the

drugs into the jail facility constituted a separate and distinct action. In this way, the conveyance offense was committed separately and with a separate animus, affirmative answers to both the second and third questions prescribed by *Ruff* [,143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31].

Our research did not yield other cases in which the failure to merge a possession conviction into an illegal conveyance conviction was challenged. In reviewing cases involving appeal of other illegal conveyance convictions, we observe the State provided evidence in many cases that upon booking, defendants were questioned as to whether they were carrying contraband and further, advised if they were later found to be carrying contraband, they would be subject to prosecution for the offense of illegal conveyance. In this manner, a distinct and separate break in the conduct would be obvious. However, the fact that the record herein does not contain evidence of such questioning, or evidence of further advisal [sic] to Appellant of a potential additional charge for any conveyance of contraband, does not change the result.

For the foregoing reasons, we find neither of Appellant's possession convictions must be merged into the illegal conveyance conviction as allied offenses for purposes of sentencing.

*Deckard* at ¶ 53-55.

**{¶ 19}** We find the Fourth District's reasoning to be even more persuasive under the facts of Moten's case. Moten had the "baggies" containing saleable quantities of

cocaine and heroin hidden on his person before being transported to the jail. Despite being warned that conveying contraband into the jail could result in additional charges – a warning absent from the *Deckard* case – Moten failed to disclose the presence of the concealed drugs, and instead attempted to carry them into the jail with him. As observed by the Fourth District in *Deckard*, Moten's disregard of such warnings evidences "a distinct and separate break" in his conduct. *See id.* at ¶ 54.

{¶ 20} Moten's illegal conveyance of the drugs into the jail was "committed separately" from his trafficking of those drugs outside of the jail. Additionally, Moten's illegal conveyance reasonably can be inferred to have been "committed with separate animus or motivation" from his trafficking of the same drugs – e.g., intended to conceal those drugs to prevent their confiscation by police and the prospect of additional charges and/or to preserve the drugs for his own use while incarcerated, instead of simply to sell the drugs. *See Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. Either of those factors would suffice to establish that the offenses were not allied offenses of similar import committed with a single animus. *See* R.C. 2941.25. The trial court did not err by failing in Case No. 17-CR-447 to merge Moten's drug trafficking offenses with his illegal conveyance for purposes of sentencing.

{¶ 21} We are not dissuaded from that conclusion by Moten's additional suggestion that his conveyance of the drugs into the jail was "involuntary." (Appellant's Brief, p. 5). Although Moten offers no explanation as to the purported involuntariness of his conduct, the argument advanced in another illegal conveyance case provides some context. *See State v. Cargile*, 123 Ohio St.3d 343, 2009-Ohio-4939, 916 N.E.2d 775, ¶ 11. There, the "sole issue" presented on appeal was whether the defendant had

"voluntarily conveyed drugs into the jail." *Id.* at ¶ 11. The Supreme Court analyzed that issue as follows:

> The court of appeals held that entering the detention facility with drugs in his pants cuff was not a voluntary act by Cargile, because at the time of his entry, he was under arrest. Because his arrest and transport to the detention facility deprived him of the fundamental right to freedom, the court of appeals held, his presence in the facility was a wholly involuntary act on his part.
>
> We disagree with the court's analysis and conclude that Cargile's conduct constituted a voluntary act. Although Cargile did not have any choice whether to go to jail following his arrest, the fact that his entry into the jail was not of his volition does not make his conveyance of drugs into the detention facility an involuntary act. He was made to go into the detention facility, but he did not have to take the drugs with him.
>
> Conscious and aware of the physical presence of the drugs hidden in his pants cuff, Cargile did not reveal his possession of the drugs during any of the searches * * *, despite the warning Cargile received that if he brought drugs into the detention facility he would be committing a felony. Cargile declined opportunities to end his possession of the drugs before entering the facility. Accordingly, Cargile's possession of the drugs when he entered the detention facility was a voluntary act, and thus he was criminally liable under R.C. 2921.36(A)(2).

*Id.* at ¶ 12-14.

{¶ 22} The *Cargile* opinion effectively disposes of any claim that Moten's conveyance of drugs into the Clark County jail was involuntary. Moten's first assignment of error is overruled.

### *Assignment of Error #2 – Ineffective Assistance of Counsel*

{¶ 23} In his second assignment of error, Moten contends that he was denied the effective assistance of counsel by his trial attorney's "affirmative acceptance of the trial [c]ourt's imposition of a prison sentence." As evidence of that purported "acquiescence," Moten points to his trial counsel's statement during the sentencing hearing that "[o]bviously [Moten] is going to be sent to prison today." (*See* Disposition Tr. p. 5). He also faults his trial counsel for purportedly "bolster[ing] the presumption of prison by indicating that [Moten] lacked remorse, and that he was more than likely to recidivate."

*a. Standard of Review*

{¶ 24} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 141–142, 538 N.E.2d 373 (1989). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.). Trial counsel is also entitled to a strong presumption that his or her conduct

falls within the wide range of reasonable assistance. *Strickland* at 689.

*b. Moten's Ineffective Assistance of Counsel Claim*

**{¶ 25}** Moten cites no legal authority for the proposition that the conduct he attributes to his trial attorney amounted to a denial of Moten's right to the effective assistance of counsel. Furthermore, our review of the record reveals no actions by Moten's trial attorney that could be deemed to fall below an objective standard of reasonableness.

**{¶ 26}** In commenting that Moten "[o]bviously * * * is going to be sent to prison," his trial counsel was acknowledging the reality confronting Moten at that time; the seriousness of the felonies to which Moten had pled guilty, combined with his extensive criminal history and prior record of re-offending after incarceration, meant that a prison sentence of some duration "obviously" would be imposed in these consolidated cases. Moten's attorney cannot be said to have performed deficiently by offering that acknowledgment.

**{¶ 27}** Further, we do not agree that the record reflects any implication by Moten's attorney that Moten "lacked remorse" or "was more than likely to recidivate." The only remarks Moten cites as evidence of what he deems his counsel's deficiency in that respect are these:

> Mr. Moten is at an age[2] where maybe these behaviors are starting to fade
>
> in his interest * * * I just think that he's statistically reaching the outer edge
>
> where people generally commit these acts.

(Disposition Tr. p. 5).

---

[2] The PSI indicates that Moten was 41 years old at the time of sentencing.

**{¶ 28}** We do not interpret those statements as suggesting that Moten "lacked remorse" or "was more than likely to recidivate." Instead, trial counsel was urging that Moten had reached a level of maturity where he would be *less* likely to re-offend. In light of Moten's prior criminal history, no other potential arguments in mitigation can be readily gleaned from the record. Moreover, Moten was given the opportunity to offer his own expression of remorse, which largely echoed his attorney's perspective. The entirety of Moten's statement at the sentencing hearing was this:

> I would like to take ownership of everything I did, and I'm sorry. You know,
>
> I'm getting at an age where, you know, it starts to take a toll on you, you
>
> know? I would – I'm just sorry. If I could take anything back, I would.

(Disposition Tr. p. 6).

**{¶ 29}** "It is well established that the presentation of mitigating evidence is a matter of trial strategy and '[t]he decision to forgo the presentation of additional mitigating evidence does not itself constitute ineffective assistance of counsel.' " *State v. Foster*, 2d Dist. Montgomery No. 25655, 2014-Ohio-530, ¶ 14, quoting *State v. Hand,* 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 240, quoting *State v. Keith,* 79 Ohio St.3d 514, 536, 684 N.E.2d 47 (1997). Moten's trial counsel cannot be said to have performed deficiently by making a strategic decision to argue that Moten had "aged out" of drug activity and to defer to Moten to offer his own personal expression of remorse in mitigation of his offenses. *See Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70; *Fields*, 2017-Ohio-400, 84 N.E.3d 193, at ¶ 38.

**{¶ 30}** Because the performance of Moten's trial attorney did not fall below an objective standard of reasonableness due to the limited arguments he offered in

mitigation, Moten's second assignment of error is overruled.

### *Assignment of Error #3 – Imposition of Maximum and Consecutive Sentences*

{¶ 31} In his final assignment of error, Moten argues that the trial court erred by imposing consecutive and maximum sentences for all of the felony offenses in these cases. We are unable to conclude that the record clearly and convincingly fails to support the sentence imposed by the trial court or that such sentence is contrary to law.

*a. Standard of Review*

{¶ 32} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds that either (1) the record does not support certain specified findings, or (2) the sentence imposed is contrary to law. *State v. Mayberry*, 2d Dist. Montgomery No. 27530, 2018-Ohio-2220, ¶ 41, quoting R.C. 2953.08(G)(2).

{¶ 33} " 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 34} Sentences are "contrary to law" when they do not fall within statutory ranges for offenses or when the trial court fails to consider "the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12."

*State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.), citing *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58. "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 35} Under R.C. 2929.11, trial courts are to be guided by the overriding purposes of felony sentencing, which are to "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). As to R.C. 2929.12, subsection (B) lists nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense, and R.C. 2929.12(C) outlines four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each list five factors to consider in deciding if an offender is likely to commit future crimes. Under R.C. 2929.12(F), an offender's military service, if any, is considered.

{¶ 36} Separately, pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it determines that (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not

disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*State v. Brewer*, 2017-Ohio-119, 80 N.E.2d 1257, ¶ 9, citing R.C. 2929.14(C)(4).

{¶ 37} Generally, "if the trial court does not make the factual findings required by R.C. 2929.14(C)(4), then 'a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States.' " *State v. Bonnell*, 150 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 13, quoting R.C. 2929.41(A). "[J]udges are required to adhere to R.C. 2929.14(C)(4) and 2929.41(A) in imposing consecutive sentences and to make the required findings." *Id.* at ¶ 35. Therefore, a trial

court imposing consecutive sentences "must state the required findings as part of the sentencing hearing," and "should also incorporate its statutory findings into the sentencing entry." *Id.* at ¶ 29. However, the trial court "has no obligation to state reasons to support its findings[, n]or is it required to give talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.*, ¶ 37.

{¶ 38} We have read *Bonnell* to require that the necessary findings "be included in the judgment entry, although 'word-for-word recitation' of [R.C. 2929.14(C)(4)] is not required." *State v. Snowden*, 2d Dist. Montgomery No. 26329, 2015-Ohio-1049, ¶ 12, quoting *Bonnell* at ¶ 29. Omission of the necessary findings from the judgment entry "may be corrected through a nunc pro tunc entry, without any other additional proceedings, *as long* as it is apparent that the necessary findings were made by the trial court at the sentencing hearing." (Emphasis sic.) *Id.*; *see Bonnell* at ¶ 30.

b. *Moten's Challenge to Maximum Sentences*

{¶ 39} Here, the trial court in both cases imposed the maximum sentence permitted by the statutory range for each of Moten's offenses. In doing so, the court generally outlined the various sentencing purposes, principles, and factors it had considered in accordance R.C. 2929.11, R.C. 2929.12, and R.C. 2929.13. The court then articulated some specific reasons underlying its conclusions as to the relevant considerations:

* * * [I]n both cases, I find * * * no factors [under R.C. 2929.12(B) and

(C)] that would indicate [Moten's] conduct was more serious or less serious

[than conduct normally consisting these offenses].

In 2929.12(B), factors indicating recidivism is more likely, the Court finds the Defendant has previously been adjudicated delinquent – I understand it's been some time ago – and was not rehabilitated to a satisfactory degree after prior adjudication of delinquency.

[Moten] has a history of criminal convictions and has not responded favorably to sanctions previously imposed for those criminal convictions, and I find no general [sic] remorse. Actually, while the Defendant had already been stopped and charged with these two cases, he picked up * * * the other charge in 17-CR-077[0]A, which is being dismissed today; but it appears from the facts I reviewed in that case he again was in the community operating a car without any valid license and [in] possession of drugs which appear to have been prepared for resale.

Under 2929.12(E), factors indicating there's a less likelihood of recidivism, I find none of those factors applicable to these cases.

The Defendant has no military service record to consider.

The Defendant scored high on the Ohio Risk Assessment Survey.

As to 2929.13, the factors of mandatory community control – well, first of all, the highest offense in these cases is a felony of the third degree so it would not apply[,] and his prior felony convictions would also make it an inapplicable statute.

The Court finds a combination of community control sanctions would demean the seriousness of the Defendant's conduct and its impact upon the victim, which at this point is the community, which has been somewhat

laid low by the drug problems, including opioid – especially opioid, I guess; and the Defendant, as pointed out by the State, appears to be a mid-level provider of that poison to this community.

A sentence of imprisonment is commensurate with the serious[ness] of his conduct and its impact on the victim and does not place an unnecessary burden on the State governmental resources.

In looking at 2929.13(D), I find that the factors do not overcome any presumption or reason for a prison sentence.

* * *

* * * [Further, as to the Count Five offense], illegal conveyance of a drug of abuse onto a governmental facility, in this case the Defendant was trying to take drugs into the Clark County Jail where in the past people have overdosed in the jail; and I am familiar with at least one death from drugs that were smuggled into the jail. * * *

(Disposition Tr. pp. 7-9).

**{¶ 40}** Moten has identified no particular factor mentioned by the trial court that Moten claims relied on inaccurate information or was unsupported by the record, and our review of the record confirms that it does not clearly and convincingly fail to support the trial court's findings. The trial court had discretion to discount Moten's profession of remorse. *See, e.g., State v. Hand*, 2d Dist. Clark No. 2016-CA-51, 2017-Ohio-7340, ¶ 9 ("the trial court had discretion to conclude, based in part on [defendant's] decades-long criminal career, that his expressions of remorse were not genuine"); *State v. Spencer*, 2d Dist. Clark No. 2017-CA-22, 2018-Ohio-873, ¶ 9; *State v. Chattams*, 2d Dist. Montgomery

No. 26151, 2015-Ohio-453, ¶ 11. The court's conclusion in that regard was not unreasonable, especially given credible indications that Moten had continued to engage in illegal drug activity even after being charged in these two cases. For purposes of sentencing, a court "is not confined to [considering] the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.). Sentencing courts may consider "hearsay evidence, facts related to charges that were dismissed pursuant to a plea bargain, and allegations contained in a PSI report." *State v. Bautista*, 2d Dist. Clark No. 2015-CA-74, 2016-Ohio-5436, ¶ 12, citing *State v. Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, ¶ 8.

**{¶ 41}** Here, the trial court properly considered the criteria set forth in R.C. 2929.11, 2929.12, and 2929.13. Moten's sentences were within the statutory sentencing range, the record does not clearly and convincingly fail to support the court's decision to impose maximum sentences, and the sentences were not contrary to law. Accordingly, Moten's challenge to the trial court's imposition of maximum sentences is overruled.

*c. Moten's Challenge to Consecutive Sentences*

**{¶ 42}** The trial court's findings made during the sentencing hearing complied with the statutory requirements for imposing consecutive sentences. After pronouncing Moten's maximum sentence for each offense, the trial court stated:

> The Court finds consecutive service as to these sentences imposed
> in 17-CR-0447 and 17-CR-0744B is necessary to protect the public from
> future crime and to punish the Defendant and that consecutive sentences
> are not disproportionate to the seriousness of the Defendant's conduct and

to the danger that he poses to the public.

The Court also finds Defendant's history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by the Defendant.

(Disposition Tr. p. 11).

{¶ 43} The findings contained within the first sentence above satisfy two of the three prerequisites to consecutive sentences under R.C. 2929.14(C)(4). The finding contained in the second sentence fulfills the third requirement as set forth at R.C. 2929.14(C)(4)(c), and is supported by the PSI's recitation of Moten's extensive criminal history.[3] The court then repeated those same findings in its sentencing entry. (*See* 2/14/18 Amended Nunc Pro Tunc Judgment Entry of Conviction, p. 4). As such, the trial court fully complied with the requirements for imposing consecutive sentences in accordance with R.C. 2929.14(C)(4). *See Bonnell*, 150 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, and *Snowden*, 2d Dist. No. 26329, 2015-Ohio-1049, at ¶ 12.

{¶ 44} Moten's third assignment of error is overruled.

### *Conclusion*

{¶ 45} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

---

[3] Further, although not explicitly recited in support of consecutive sentences, the trial court's earlier observation that Moten was charged with another drug possession offense while these cases were pending also is relevant. *See* R.C. 2929.14(C)(4)(a).

Copies sent to:

John M. Lintz
Michael T. Columbus
Hon. Richard J. O'Neill